1
        IN THE UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF MARYLAND
2                   NORTHERN DIVISION

3   UNITED STATES OF AMERICA,        )
                                     )
4          Plaintiff,                )
        vs.                          )
5                                    ) CRIMINAL NO.:
    BRENDAN FRANCIS KAVANAUGH,       ) 20-cr-00429-SAG-1
6                                    )
           Defendant.                )
7   _____)

8
                              Baltimore, Maryland
9                             February 7, 2022
                              10:00 a.m.
10
                    TRANSCRIPT OF PROCEEDINGS
11                    **SENTENCING HEARING**
          BEFORE THE HONORABLE STEPHANIE A. GALLAGHER
12                       Courtroom 7C

13
    For the Plaintiff:
14
        Mary Setzer, Esquire
15         U.S. Attorney's Office

16
    For the Defendant:
17
        Larry A. Nathans, Esquire
18         Nathans and Biddle, LLP

19

20  Also Present:  Schiller Salomon, FBI

21      Proceedings recorded by mechanical stenography, transcript
    produced by computer.
22

23  _____

24              Patricia G. Mitchell, RMR, CRR
                Federal Official Court Reporter
25              101 W. Lombard Street, 4th Floor
                   Baltimore, Maryland 21201

                    P R O C E E D I N G S

1

2        (10:04 a.m.)

3            THE COURT:  Good morning.  Please be seated.

4    Ms. Setzer, would you like to call the case.

5            MR. NATHANS:  Good morning, Your Honor.

6            MS. SETZER:  Yes, thank you, Your Honor.  Good

7    morning.  Calling United States of America versus Brendan

8    Kavanaugh, Criminal Case Number SAG-20-429.  Mary Setzer here

9    on behalf of the Government.  We're here for a sentencing, and

10   I'm joined by Special Agent Schiller Salomon of the Federal

11   Bureau of Investigation.

12           THE COURT:  Good morning to both of you.

13   Mr. Nathans?

14           MR. NATHANS:  Good morning, Your Honor.  Nice to see

15   you.  Larry Nathans here.  To my left is Brendan Kavanaugh.

16           THE COURT:  Good morning to both of you.

17           The rule in terms of masking in the courtroom

18   presently is that people who are speaking are permitted to

19   remove their mask if they wish to do so.  Otherwise, everyone

20   should remain masked throughout the proceeding.

21           All right.  On December 2 of 2021, Mr. Kavanaugh

22   appeared before the Court for rearraignment and at the

23   conclusion of that proceeding was found guilty on the one-count

24   indictment.  The Court ordered preparation of a presentence

25   report, and the sentencing was eventually scheduled for today.

1          I have now received and reviewed the following items:

2     The presentence report; Mr. Kavanaugh's sentencing memorandum

3     which attached a series of exhibits including some military

4     commendations and records; letters from his daughter, brother,

5     wife, and a treating psychologist; and I've also received the

6     Government's sentencing memorandum along with a set of victim

7     impact letters from victims of the offense.

8          Is there anything else that I should have received

9     and have not mentioned, Ms. Setzer?

10          MS. SETZER:  Not from the Government's perspective.

11          THE COURT:  Mr. Nathans?

12          MR. NATHANS:  No, Your Honor.

13          THE COURT:  Mr. Nathans, have you and your client

14     read and discussed the presentence report?

15          MR. NATHANS:  We have, Your Honor.

16          THE COURT:  Are there any objections or corrections?

17          MR. NATHANS:  No, Your Honor.

18          THE COURT:  Ms. Setzer, have you reviewed the report?

19          MS. SETZER:  Yes, Your Honor.

20          THE COURT:  And do you have any corrections?

21          MS. SETZER:  No.  Thank you, Your Honor.

22          THE COURT:  Okay.  I understand that in this case

23     there is an agreement both as to the appropriate term of

24     imprisonment and as to restitution.  Are there any particular

25     issues that are in dispute as we commence this hearing?

1      MS. SETZER:  I believe just the recommendation as to

2  the period of supervised release.  I believe that that's really

3  the only outstanding thing.

4      THE COURT:  Okay.  Mr. Nathans, does she have that

5  right?

6      MR. NATHANS:  I believe so, Your Honor.  The only

7  other things that I wanted to address briefly would be fine and

8  also a recommendation about placement.

9      THE COURT:  Okay, yes, we can get to that --

10      MR. NATHANS:  But I also doubt that's in dispute.

11      THE COURT:  All right.  There are a couple of other

12  assessments.  There's the $5,000 additional special assessment

13  and then the additional assessment in these sorts of cases that

14  we need to discuss when we get to that point as well.

15      Mr. Kavanaugh, the first thing we need to do is do

16  the mathematical calculations that are required under the

17  sentencing guidelines to determine your guideline range.

18      In this case, the agreement that you and your

19  attorneys reached with the Government seems to be the same as

20  the calculations that Pretrial has reached which is that the

21  base offense level in this case is 18 pursuant to guideline

22  2G2.2(a)(1).  There is a two-level enhancement because the

23  material possessed involved a prepubescent minor or minor who

24  had not attained the age of 12 years.  That's guideline

25  2G2.2(b)(2).

1          There is another four-level enhancement because the

2   material portrays sadistic or masochistic conduct or other

3   depictions of violence or the sexual abuse or exploitation of

4   an infant or toddler.  That's guideline 2G2.2(b)(4)(A) and

5   (B).

6          There is another two-level enhancement because the

7   offense involved the use of a computer or interactive computer

8   service.  That's guideline 2G2.2(b)(6).  And another five-level

9   enhancement because the offense involved 600 or more images.

10  That's guideline 2G2.2(b)(7)(D).

11          That makes the subtotal offense level 31.  There is a

12  two-level decrease for acceptance of responsibility, and then I

13  understand that the Government makes a motion at this point for

14  a third-level decrease?

15          MS. SETZER:  Yes, Your Honor, we would make that

16  motion.

17          THE COURT:  That would be granted so the total

18  offense level is therefore 28.

19          With respect to criminal history, Mr. Kavanaugh has

20  no criminal history, and his criminal history score is zero

21  which puts him in a Criminal History Category I.

22          Does everyone agree with those calculations?

23  Ms. Setzer?

24          MS. SETZER:  Yes, Your Honor.

25          THE COURT:  Mr. Nathans?

1      MR. NATHANS:  We do, Your Honor.

2      THE COURT:  All right.  So the advisory guideline

3  range for this case based upon those calculations would be 78

4  to 97 months of incarceration which places the sentence that

5  the parties are jointly requesting within the guideline

6  range.

7      As I mentioned earlier, the Government has submitted

8  a significant number of victim impact statements in this case

9  which I have reviewed.  Are any victims present today that wish

10  to address the Court?

11      MS. SETZER:  No, Your Honor.  Thank you.

12      THE COURT:  All right.  Do you, Ms. Setzer, have a

13  statement you would like to make on behalf of the Government?

14      MS. SETZER:  Yes, briefly, Your Honor.  Thank you.

15  As Your Honor indicated, the parties have agreed to recommend a

16  sentence of 84 months of incarceration which is within the

17  guidelines, so the Government will focus briefly on its

18  recommendation for a period of supervised release of

19  lifetime.

20      As Your Honor knows, the minimum period, the minimum

21  period that must be imposed is five years.  We're asking for a

22  lifetime period for the following reasons.  As Your Honor

23  knows, both from the statement of facts that the defendant has

24  admitted to and as has seen through a number of victim impact

25  statements based on identified victims, the number of children

1  that were revictimized by the defendant is an extremely large

2  number, several thousand.  And his conduct also involved

3  sadistic and masochistic exploitive images as well as babies

4  and toddlers.  Of course, the Court was already aware of that.

5  And I'll just mention briefly only for the purpose of

6  supporting our recommendation for supervised release, there was

7  a concern about whether the defendant's behavior continued

8  while on pretrial release.  There was a second search warrant

9  that was done of his residence.  We were unable to get into

10  those devices.  I merely mention that because it gives us

11  concern.  While we don't stand here and doubt that he is

12  contrite, we have concerns about a potential to reoffend.

13  We do think the sentence of incarceration is

14  appropriate as it's within the guidelines.  However, we are

15  asking for a period of supervised release of lifetime for those

16  reasons, Your Honor.

17  As the Court knows from the victim impact statements,

18  these children are forever revictimized every time someone

19  possesses their images.  There was an indication that sort of

20  implied through the statement of facts with the defendant's Tor

21  network activity that the defendant was posting links of

22  images.  He was not charged with distribution because the

23  forensic analysis that we were able to do did not support those

24  charges.  However, that's the conduct that we were aware of

25  based on links that were being posted by the defendant, Your

1 Honor.

2          So we do feel a supervised release term of lifetime

3 is appropriate.  The defendant was relocated while on pretrial

4 release.  We had a hearing and we came to an agreement that he

5 would move out of the residence with his wife and move to a

6 different third-party custodian out of state.

7          Your Honor, with that being said, the Government

8 doesn't have specific further arguments other than to note that

9 we are momentarily, if not already, filing a motion for

10 preliminary order of forfeiture.  I thought that had been done,

11 but it will be done hopefully by the conclusion of today's

12 hearing.  We would just request that there's an oral

13 pronouncement of that one forfeited item just in case our

14 motion has not yet been docketed.

15          THE COURT:  Okay.  Let me ask you on the two

16 financial issues I mentioned earlier, does the Government take

17 a position with respect to the -- I anticipate I may get a

18 request for a finding of indigency as to the 5,000 additional

19 special assessment.  Does the Government take a position as to

20 that?

21          MS. SETZER:  Your Honor, we don't think that's the

22 case based on the defendant's employment at the time this

23 occurred and based on his education level and his wife's as

24 well.  But we don't have significant further detail other than

25 we were aware of him being employed in the cybersecurity field.

1   I believe his wife is employed as well.  Obviously our priority

2   would also be restitution for those victims, so with that being

3   said, Your Honor, we don't feel that he would qualify, but we

4   don't have specific information to elaborate upon that.

5           THE COURT:  Okay.  What about any additional

6   assessment under the Amy, Vicky and Andy Act?  Does the

7   Government take a position as to that?

8           MS. SETZER:  No, Your Honor.

9           THE COURT:  All right.  If there's nothing further,

10  Mr. Nathans, do you have argument you wish to present?

11          MR. NATHANS:  Thank you, Your Honor.

12          Your Honor, I'll be brief.  If it's okay, can I say

13  some things outside of those specific topics?

14          THE COURT:  Absolutely.

15          MR. NATHANS:  Thank you.  I wanted to first say that

16  today in court, Mr. Kavanaugh's wife, Sarah Kavanaugh, is here

17  and also a good friend of hers, Marla, in the back.  They're

18  here to support.  It was decided that their daughter XXXXXX,

19  they asked her to go to school today, they thought that was

20  more appropriate.

21          Your Honor, I'm going to be brief.  I know the Court

22  has read what we submitted and what the Government has

23  submitted.  Because it was a C plea, we felt we didn't need to

24  overload the Court with documents, but we felt that the

25  military records that we put in at least gave the Court a

1   pretty good idea over a period of 20-some years that he had

2   done a very good job and had been awarded and was successful,

3   including numbers of things like going through war photos in

4   Bosnia and things like that that were extremely disturbing.

5   But he won a number of awards.  As the Court knows, he

6   volunteered quite a bit in the military, and he had quite a

7   success.

8           We've asked in the letter we sent to the Court, and

9   also today, that the Court adopt the agreement about 84 months.

10  Both the Government and the Defense, that was a negotiated

11  sentence and we believe it's appropriate.  We've agreed to a

12  restitution too, Your Honor.

13          Mr. Kavanaugh -- I'm going to be circumspect with

14  what I say on the record.  I think it's fair to say that he had

15  a very, very difficult start in his life, a very hard life.

16  And I think one of the things to be noted here is despite that

17  very difficult life, he turned it around a lot, and he became a

18  very productive citizen.  He was employed at a very early age

19  and although we gave the probation department a number of

20  employments, they were so far back, just sort of kid,

21  high-school jobs, but he was employed very young.  He was

22  always employed.

23          Then as the Court knows, he spent a lot of years in

24  the military where he did very well.  He's had -- besides the

25  military which he joined in 1991, he was there for 24 years --

1   he then worked as a contract manager with the Defense

2   Information Systems and NASA and for a short time at Booz Allen

3   before his arrest here.  He subsequently has not been employed

4   since that time.  I'll talk about that in a second.

5           He's also been married for a long time, Your Honor.

6   He's raised a beautiful daughter.  He's been successful in many

7   ways.  And he's faulted, that's why he's here.  He obviously

8   had a problem.  He was drinking too much.  And although he's

9   had a life history of problems, he probably has not gotten

10  adequate care over time.

11          Since the government came in in this case, he stopped

12  drinking which I think was important, very important thing to

13  go forward.  He's also received on his own -- this was before

14  he had any lawyers, he sought out treatment on his own and was

15  referred to Hopkins, I think, by a hospital.  And he went there

16  and he's had lots of treatment there, and I think that's helped

17  him and he's learned a lot.

18          Your Honor, as to the supervised release, I'd like to

19  say something about that.  We're asking that the Court sentence

20  him to the period of supervised release that the probation

21  department asked for which was 15 years.  If we do some math on

22  it, it doesn't make much sense to do anything different or

23  longer than that.  My client is now 53 and a half years old.

24  If I've calculated this correctly, if he serves almost six

25  years on this sentence, he will be just shy of 60 when he gets

1   out.  If he gets a term of 15 years of supervised release, he

2   will be just shy of 75 at that point which is a pretty

3   significant age to be having somebody on probation.

4         Judge, he spent the last couple of months in

5   Chesapeake Detention Center.  I know we had requested the

6   potential he not go there.  The problem was he got there right

7   at the wrong time.  It was right when Omicron was starting.

8   He's been pretty locked down the whole time.  The marshals were

9   not able to move him.  It's been also a very eye opener there

10   for him.  It's a difficult time over there.  I think he told me

11   today he hadn't been out of his pod 53 days or something like

12   that, not to mention the initial part where they put him in

13   isolation and all that's been going on.

14         Judge, he is extremely remorseful.  I think one of

15   the things that I know people have been talking to him a lot

16   about is just how hard he is on himself about this.  He is

17   very -- truly ashamed about this.  He's motivated to change.  I

18   think he's motivated to change by the fact he sought therapy on

19   his own, he consistently went to therapy.  He spent a year on

20   supervised release and he -- I think he's done extremely well.

21         The Government mentioned the second search warrant.

22   We have a very different take on that.  It would take a long

23   time to argue it.  I, quite frankly, believe there are a lot of

24   leaps and bounds in the search warrant and things that didn't

25   necessarily add up.  At the end of the day, they came in and

1   searched and they took some things out, and nothing in there,

2   to my understanding, has led to anything new.  The Government

3   has had a lot of time on that.

4          Additionally, Judge, I think part of what the

5   allegation was is there was a mixup about what he was allowed

6   to have at his house and not allowed to have at his house.  I

7   know that I've talked to the Government and I've shared with

8   Pretrial Services that there was a question about an iPhone.

9   There were emails back and forth between Mrs. Kavanaugh and

10  Pretrial basically letting them know he had his iPhone and it

11  was disabled.  I think some of that was just a mistake.

12         So, Your Honor, I would ask the Court not to put much

13  thought in that.  We could go through the search warrant at

14  length, which I had been prepared to do if we actually had a

15  hearing, but the Government agreed that we did not need to go

16  forward with a hearing back in May of this year.

17         Those events too, whatever was alleged, would have

18  occurred over a year ago, before he's been on supervised

19  release for almost that year, for all the things that he's done

20  since then.  So as to the term of supervised release, I would

21  ask the 15 years which is quite significant, would cover him

22  until he's almost 75 years old.

23         As to a fine, Your Honor, I actually was not aware of

24  this until recently and I don't know why I wasn't aware of this

25  or whether this changed, but I did call the financial

1    department over here and they told me the way this works is the

2    first thing that happens is the special assessment is paid, and

3    then restitution is paid, and then a fine is paid at the end.

4    So I'd like to talk a little bit about what I see his situation

5    being.

6         With him coming out at age 60 or close to 60, I think

7    his chances of being employed are very minimal.  He hasn't been

8    obviously employed since December of 2020.  He'll be almost 60.

9    He'll have a serious criminal record for this offense.  He has

10   long-standing back issues which would probably keep him from

11   doing some kind of minor employment that maybe he otherwise

12   would be.

13        In the financial part of the presentence report, it

14   includes some things that I don't know that he will actually

15   have in the future.  For example, I know they will take at

16   least 90 percent of his disability benefits now.  I think he'll

17   have to reapply.  Whether he gets all of that, I don't know.

18   Part of the only income that's really coming in right now is

19   from his wife.  I don't know where that will be six years from

20   now so I don't know.

21        So I would say to the Court that I'd ask the Court

22   not to impose a fine.  I believe he is indigent, will be

23   indigent, and to be quite candid anyway, Your Honor, that fine

24   would be paid on the back of the restitution anyway.

25        So, Your Honor, regarding those two matters --

1          THE COURT:  Let me clarify one thing, Mr. Nathans,

2    because you obviously have agreed to a significant amount of

3    restitution.  There is no pot of money currently sitting aside

4    waiting to pay that restitution?  That will be paid sort of in

5    installments?

6          MR. NATHANS:  I'm unaware of any pot of money, Your

7    Honor, yes, so I think it would have to be paid through

8    installments.

9          THE COURT:  Yes.

10         MR. NATHANS:  Your Honor, I don't know whether you

11   have any question on those two issues.  If it's appropriate at

12   this point to talk about the Bureau of Prisons placement, I

13   would have a recommendation.

14         THE COURT:  Sure.

15         MR. NATHANS:  Your Honor, there's a gentleman I know

16   who used to be in the BOP, and he has a business where he gives

17   people some help.  I called him and he actually just gave me

18   some advice.  He knows all these facilities and has a sense of

19   which ones are safer and not safer and he did me a favor, told

20   me what he thought.

21         He's recommended that we ask that Mr. Kavanaugh be

22   designated to Allenwood Low Security which I don't think is a

23   stretch at all because Allenwood is probably what the BOP would

24   want to do.  It meets their guidelines because he's going to be

25   low, and it's also within this jurisdiction and they try and

1    put them as close as possible.  He's told me that he believes

2    that place is run a little safer for people with these kind of

3    charges, so obviously we'd have an issue in that.  So for that

4    reason, we'd ask the Court to make a recommendation, which we

5    know is a recommendation, to have him placed at Allenwood.

6    Thank you, Your Honor.

7                THE COURT:  Thank you.

8           **(Conference at the bench.**

9           **It is the policy of this court that every guilty plea and**

10    **sentencing proceeding include a bench conference concerning**

11    **whether the defendant is or is not cooperating.)**

12                THE COURT:  All right.  Mr. Kavanaugh, you have an

13    absolute right to address the Court before sentence is imposed.

14    You're not required to speak or say anything at all, but if you

15    wish to, I'm eager to hear anything you have to say.

16                THE DEFENDANT:  Thank you, Your Honor.  Your Honor, I

17    say from deep in my heart how truly sorry I am for my actions

18    and for the pain that they've caused.  I've been working hard

19    to become a better person since everything started, and I will

20    continue to work hard to make sure nothing like this ever

21    happens again.  I thank you, Your Honor, for your time and your

22    patience to allow me to speak openly and candidly with you.

23                THE COURT:  Absolutely, thank you, and I appreciate

24    those comments, Mr. Kavanaugh.

25                MR. NATHANS:  Thank you, Your Honor.

1          THE COURT:  All right.  After calculating the
2    guidelines that apply in this case and hearing the arguments of
3    counsel and from Mr. Kavanaugh, I have to now consider the
4    relevant factors that Congress set out in the sentencing
5    statute, 18 United States Code § 3553(a), to ensure that I'm
6    imposing a sentence sufficient but not greater than necessary
7    to comply with the purposes of that statute.
8          So first I have to look at the history and
9    characteristics of the defendant.  As we've just heard,
10   Mr. Kavanaugh is 53 years old.  He did have a traumatic
11   childhood or a very difficult start as Mr. Nathans mentioned
12   earlier.  He eventually enlisted in the military where he
13   received a number of commendations and had a very distinguished
14   career.  He married and had a daughter, and his wife and
15   daughter remain supportive of him.  As Mr. Nathans mentioned,
16   his wife is here today.
17         He has no prior criminal history, and I think his
18   wife described it well in her letter when she said that he is a
19   fundamentally good person who tried to process his own trauma
20   in an inappropriate manner.
21         Turning to the nature and circumstances of the
22   offense, as the Government mentioned earlier, the quantity of
23   images and videos of child pornography in this case is an
24   extensive one.  Mr. Kavanaugh was cooperative with the
25   investigators.  He provided information readily to them, and he

1   took responsibility for his conduct, but he had amassed a

2   sizable collection of disturbing images.  So although there's

3   no evidence here of physical interaction with children, the

4   online conduct had significant damaging effects on hundreds of

5   people, children who were victimized years ago and cannot

6   escape being revictimized every time those images are shared or

7   viewed.

8           I do need to consider the seriousness of the offense.

9   And as we talked about, this is an extremely serious offense

10  that warrants a significant sentence.

11          I have to consider deterrence which is important

12  here, both general deterrence because people need to understand

13  that there are meaningful consequences for possession of child

14  pornography, and also specific deterrence of Mr. Kavanaugh from

15  this type of conduct.  The need to protect the public is an

16  important factor in this case, given the nature of the charged

17  conduct.

18          I need to consider the need to avoid unwarranted

19  sentencing disparities among defendants with similar records

20  and culpability.  Here the parties' agreed sentence is within

21  the sentencing guideline so there's not a particular fear of a

22  disparity.

23          The need to provide the defendant with training or

24  treatment.  Things are, thankfully, improving in the BOP after

25  the pandemic when some of the training and treatment was

1   suspended.  Hopefully during the course of Mr. Kavanaugh's

2   service of his sentence, he will be able to avail himself of

3   some of the regular programming and including getting regular

4   treatment for his mental health issues.

5          And I need to consider the advice of the Federal

6   Sentencing Guidelines which, as I mentioned, is 78 to 97

7   months.

8          Therefore, I do believe it's appropriate to accept

9   the parties' plea agreement and impose the sentence that they

10  agreed to, which is sufficient but not greater than necessary

11  to comply with the purposes of the sentencing statute, which is

12  an 84-month sentence.

13         In terms of supervised release, I understand what

14  Mr. Nathans is advocating.  I do believe it's appropriate on

15  the front end in this case for me to impose a sentence of life

16  supervised release but express on the record my willingness to

17  reconsider that if Mr. Kavanaugh is released and is performing

18  well on supervised release.  I am not necessarily wed to

19  keeping him on supervised release for life, but I think that

20  will be determined by the track record he establishes when he

21  comes out and is on supervised release.

22         Some people adjust better than others to these

23  things.  I always do think it's appropriate when they are

24  adjusting well and being compliant to be flexible on the back

25  end, but I think on the front end, given the nature of these

1  particular charges, that it's appropriate to impose life of

2  supervised release at this point.

3          Have you reviewed the mandatory and standard

4  conditions of supervised release with your client, Mr. Nathans,

5  or should I review those on the record?

6          MR. NATHANS:  I have reviewed them, Your Honor.

7          THE COURT:  You have, okay.  So I will be imposing

8  the mandatory and standard conditions.  Did you understand

9  those when your attorney reviewed them, Mr. Kavanaugh?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  Okay.  Let me just go over the additional

12  recommended conditions of supervision in this case.

13          You must not have any direct contact with any child

14  you know or reasonably should know to be under the age of 18

15  without permission of your probation officer.  If you do have

16  any direct contact of that nature, you must report the contact

17  to the probation officer within 24 hours.  Direct contact would

18  include written communication, in-person communication, or

19  physical contact but does not include incidental contact during

20  ordinary daily activities.

21          You must not go to or remain at any place where you

22  know children under the age of 18 are likely to be, including

23  parks, schools, playgrounds or child care facilities.

24          You must allow your probation officer to install

25  computer monitoring software on any computer you use.  You

1    must allow the probation officer to conduct initial and

2    periodic unannounced searches of any computers that are subject

3    to the monitoring and warn any other people who use the

4    computers that the computers may be subject to search.

5              You must provide your probation officer with access

6    to any requested financial information and authorize the

7    release of financial information.

8              You must participate in a sex offense specific

9    assessment and a sex offense specific treatment program and

10   follow the rules and regulations of that program.

11             You must pay any assessments that are imposed.

12             You must participate in a mental health treatment

13   program and follow the rules and regulations of that program.

14             You must submit to substance abuse testing to

15   determine if you've used any prohibited substances and, if

16   recommended by your probation officer, participate in a

17   substance abuse treatment program and follow the rules and

18   regulations of that program as well.

19             So those are the special conditions that are being

20   imposed in this case.

21             With respect to the question of a fine, I am not

22   going to impose a fine because I do not believe that

23   Mr. Kavanaugh has the ability to pay a fine in addition to the

24   significant amount of restitution he is agreeing to.

25             I am going to impose the agreed restitution amount of

1   $128,000.  I'm going to preliminarily make that payable in an

2   amount of $250 per month once he is released from prison.  It

3   is very difficult in this case to know whether that is a

4   reasonable number or not because, as Mr. Nathans said, we

5   really don't know what his financial circumstances will be at

6   the time he is released, so that too will be subject to

7   modification or revision, either upwards or downwards,

8   depending on his financial circumstances when he is released.

9   Obviously we want to try to collect the restitution if

10  possible, but if he has no financial wherewithal to make

11  payments, we need to keep that in mind as well.

12          There is a forfeiture issue.  I understand that an

13  order will be forthcoming but that -- let me just make sure I'm

14  putting it accurately on the record.

15          MS. SETZER:  Your Honor, it's page 8 --

16          THE COURT:  Yes, I think I have it here, that he's

17  agreeing to forfeit the Western Digital My Passport Ultra

18  External Hard Drive with serial number WXF1A66DUYEE.

19          Is that correct, Mr. Kavanaugh?  You understand

20  you're agreeing to forfeit that item?

21          THE DEFENDANT:  Yes, Your Honor.

22          THE COURT:  I have that right, counsel?

23          MS. SETZER:  Yes, Your Honor.  Thank you.

24          MR. NATHANS:  Yes, you do, Your Honor.

25          THE COURT:  There's also a number of items

1  incidentally that the defendant has agreed to abandon that are

2  detailed in paragraph 7 of the presentence report.  I don't

3  believe there's any issue as to that either.

4          MS. SETZER:  No, Your Honor.

5          MR. NATHANS:  There is not.

6          THE COURT:  Okay.  All right.  There is a special

7  assessment of $100.  There is also a potential special

8  assessment of $5,000 pursuant to the JVTA.  In this case I am

9  going to make a finding, based on the record before me, that

10 Mr. Kavanaugh is indigent such that I will not impose that

11 additional $5,000 special assessment.  I believe in this case

12 that it is more important that the monies be marshaled toward

13 the restitution that Mr. Kavanaugh owes to the victims of this

14 case.

15         For a similar reason, I am not going to impose an

16 assessment under the Amy, Vicky and Andy Child Pornography

17 Victim Assessment Act which provides for additional

18 assessments.  Again, I think that the amount of restitution he

19 is agreeing to is already a very significant financial penalty

20 that he may not be able to fulfill in its entirety, and I would

21 rather his resources be marshaled towards that.

22         I am going to make the recommendation that

23 Mr. Nathans asked for that Mr. Kavanaugh be designated to

24 Allenwood Low Security.  Again, that is up to the Bureau of

25 Prisons so I have no authority over that, but I will make the

1    recommendation that that be the place of designation.

2           Let me say, Mr. Kavanaugh, like so many of these

3    cases, this is a very sad case, and I know that the sentence I

4    am imposing is a significant one.  I think that the agreement

5    that you with your counsel and the government have reached is a

6    very reasonable agreement as to the sentence, but what's going

7    to be determinative as to whether you reoffend is whether

8    you're able to address your own trauma and bring your impulses

9    under control by maintaining the counseling and the care that

10   you've now sought out for yourself and I think is helping you

11   to understand the ramifications of your conduct.

12          In that vein, the long term of supervision that I'm

13   imposing after your sentence of imprisonment is in some ways

14   the most important component of this sentence because it means

15   that someone will be monitoring your actions and making sure

16   that you do not reoffend, that you really have learned the

17   important lessons and have been able to bring your impulses

18   under control.

19          I do appreciate your acceptance of responsibility for

20   your actions and your decision on your own to seek out help in

21   this case even before your lawyers advised you to do so.  The

22   issues resulting from your traumatic childhood clearly

23   contributed to the situation in which you now find yourself,

24   but you are a person of very great potential; you accomplished

25   some great things during your military career, and you have

1  some wonderful support from your family.  So I hope you're able

2  to avail yourself of those strengths and the resources that

3  you'll get at the Bureau of Prisons and on supervision to help

4  you get and stay on the right path.  I believe that this

5  sentence does the best possible job of balancing all of those

6  considerations with the lengthy period of supervision as extra

7  insurance.

8        Let me advise you of your appellate rights.  You can

9  appeal your conviction if you believe that your guilty plea was

10  somehow unlawful or involuntary or if there's some other

11  fundamental defect in the proceeding that was not waived by

12  your guilty plea.  You may also appeal your sentence if you

13  believe it is unlawful.

14        Before filing any appeal, you and your lawyer should

15  consider whether you waived any or all of your appellate rights

16  when you entered into your plea agreement.  But if you do wish

17  to file a notice of appeal, it must be filed within 14 days.

18        Mr. Kavanaugh will be detained until his designation.

19  A judgment and commitment order will be prepared with a

20  statement of reasons which will be filed with the Sentencing

21  Commission and the Bureau of Prisons.

22        Are there any counts to be dismissed, Ms. Setzer?

23        MS. SETZER:  Actually, Your Honor, I believe it was a

24  one-count indictment.  Yes, it was a one-count indictment so

25  there are not.

1          THE COURT:  Okay.  Do you agree with that,

2    Mr. Nathans?

3          MR. NATHANS:  I agree, Your Honor.  Thank you.

4          MS. SETZER:  Sorry, I was trying to recall, but yes,

5    it was one count.

6          THE COURT:  No problem.  Is there anything else we

7    need to address in this matter today?

8          MS. SETZER:  No.  Thank you, Your Honor.

9          MR. NATHANS:  No, Your Honor.  Thank you.

10         THE COURT:  Thank you and good luck to you,

11   Mr. Kavanaugh.

12         THE DEFENDANT:  Thank you, Your Honor.

13      (Proceedings concluded at 10:38 a.m.)

14

15         I, Patricia G. Mitchell, RMR, CRR, do hereby certify

16   that the foregoing is a correct transcript from the
     stenographic record of proceedings in the above-entitled

17   matter.

18         Dated this 15th day of March 2022.

19

20                    *Patricia G. Mitchell*

21         _____

22              Patricia G. Mitchell
                Official Court Reporter

23

24

25

**< Dates >**
**December 2** 2:21 .
**February 7, 2022** 1:17 .
**March 2022** 26:21 .
**$100** 23:7 .
**$128,000** 22:1 .
**$250** 22:2 .
**$5,000** 4:12, 23:8, 23:11 .
**(10** 2:2 .
**(1004** 2:2 .
.
.
**< 1 >.**
**101** 1:49 .
**10:00** 1:18 .
**10:38** 26:13 .
**12** 4:24 .
**14** 25:17 .
**15** 11:21, 12:1, 13:21 .
**15th** 26:21 .
**18** 4:21, 17:5, 20:14, 20:22 .
**1991** 10:25 .
.
.
**< 2 >.**
**2(a)(1** 4:22 .
**2(b)(6** 5:8 .
**20-cr-00429-sag-1** 1:10 .
**20-some** 10:1 .
**2020** 14:8 .
**2021** 2:21 .
**21201** 1:50 .
**24** 10:25, 20:17 .
**28** 5:18 .
**2G2** 4:22, 5:8 .
**2g2.2(b)(2** 4:25 .
**2g2.2(b)(4)(a** 5:4 .
**2g2.2(b)(7)(d** 5:10 .
.
.
**< 3 >.**
**31** 5:11 .
**3553(a** 17:5 .
.
.
**< 4 >.**
**4th** 1:49 .
.
.
**< 5 >.**

**5,000** 8:18 .
**53** 11:23, 12:11, 17:10 .
.
.
**< 6 >.**
**60** 11:25, 14:6, 14:8 .
**600** 5:9 .
.
.
**< 7 >.**
**7** 23:2 .
**75** 12:2, 13:22 .
**78** 6:3, 19:6 .
**7C** 1:23 .
.
.
**< 8 >.**
**8** 22:15 .
**84** 6:16, 10:9 .
**84-month** 19:12 .
.
.
**< 9 >.**
**90** 14:16 .
**97** 6:4, 19:6 .
.
.
**< A >.**
**A.** 1:22, 1:34 .
**a.m.** 1:18, 2:2, 26:13 .
**abandon** 23:1 .
**ability** 21:23 .
**able** 7:23, 12:9, 19:2, 23:20,
    24:8, 24:17, 25:1 .
**above-entitled** 26:18 .
**absolute** 16:13 .
**Absolutely** 9:14, 16:23 .
**abuse** 5:3, 21:14, 21:17 .
**accept** 19:8 .
**acceptance** 5:12, 24:19 .
**access** 21:5 .
**accomplished** 24:24 .
**accurately** 22:14 .
**Act** 9:6, 23:17 .
**actions** 16:17, 24:15, 24:20 .
**activities** 20:20 .
**activity** 7:21 .
**Actually** 13:14, 13:23, 14:14,
    15:17, 25:23 .
**add** 12:25 .

**addition** 21:23 .
**additional** 4:12, 4:13, 8:18, 9:5,
    20:11, 23:11, 23:17 .
**Additionally** 13:4 .
**address** 4:7, 6:10, 16:13, 24:8,
    26:7 .
**adequate** 11:10 .
**adjust** 19:22 .
**adjusting** 19:24 .
**admitted** 6:24 .
**adopt** 10:9 .
**advice** 15:18, 19:5 .
**advise** 25:8 .
**advised** 24:21 .
**advisory** 6:2 .
**advocating** 19:14 .
**age** 4:24, 10:18, 12:3, 14:6,
    20:14, 20:22 .
**Agent** 2:10 .
**ago** 13:18, 18:5 .
**agree** 5:22, 26:1, 26:3 .
**agreed** 6:15, 10:11, 13:15, 15:2,
    18:20, 19:10, 21:25,
    23:1 .
**agreeing** 21:24, 22:17, 22:20,
    23:19 .
**agreement** 3:23, 4:18, 8:4, 10:9,
    19:9, 24:4, 24:6, 25:16 .
**allegation** 13:5 .
**alleged** 13:17 .
**Allen** 11:2 .
**Allenwood** 15:22, 15:23, 16:5,
    23:24 .
**allow** 16:22, 20:24, 21:1 .
**allowed** 13:5, 13:6 .
**almost** 11:24, 13:19, 13:22,
    14:8 .
**already** 7:4, 8:9, 23:19 .
**although** 10:19, 11:8, 18:2 .
**amassed** 18:1 .
**America** 1:5, 2:7 .
**among** 18:19 .
**amount** 15:2, 21:24, 21:25, 22:2,
    23:18 .
**Amy** 9:6, 23:16 .
**analysis** 7:23 .
**Andy** 9:6, 23:16 .
**anticipate** 8:17 .
**anyway** 14:23, 14:24 .
**appeal** 25:9, 25:12, 25:14,

25:17 .
appeared 2:22 .
appellate 25:8, 25:15 .
apply 17:2 .
appreciate 16:23, 24:19 .
appropriate 3:23, 7:14, 8:3,
    9:20, 10:11, 15:11, 19:8,
    19:14, 19:23, 20:1 .
argue 12:23 .
argument 9:10 .
arguments 8:8, 17:2 .
around 10:17 .
arrest 11:3 .
ashamed 12:17 .
aside 15:3 .
Assessment 4:12, 4:13, 8:19,
    9:6, 14:2, 21:9, 23:7, 23:8,
    23:11, 23:16, 23:17 .
assessments 4:12, 21:11,
    23:18 .
attached 3:3 .
attained 4:24 .
Attorney 1:29, 20:9 .
attorneys 4:19 .
authority 23:25 .
authorize 21:6 .
avail 19:2, 25:2 .
avoid 18:18 .
awarded 10:2 .
awards 10:5 .
aware 7:4, 7:24, 8:25, 13:23,
    13:24 .
.

< B > .
babies 7:3 .
back 9:17, 10:20, 13:9, 13:16,
    14:10, 14:24, 19:24 .
balancing 25:5 .
Baltimore 1:16, 1:50 .
base 4:21 .
based 6:3, 6:25, 7:25, 8:22, 8:23,
    23:9 .
basically 13:10 .
beautiful 11:6 .
became 10:17 .
become 16:19 .
behalf 2:9, 6:13 .
behavior 7:7 .
believe 4:1, 4:2, 4:6, 9:1, 10:11,

12:23, 14:22, 19:8, 19:14,
    21:22, 23:3, 23:11, 25:4,
    25:9, 25:13, 25:23 .
believes 16:1 .
bench 16:8, 16:10 .
benefits 14:16 .
besides 10:24 .
best 25:5 .
better 16:19, 19:22 .
Biddle 1:35 .
bit 10:6, 14:4 .
Booz 11:2 .
BOP 15:16, 15:23, 18:24 .
Bosnia 10:4 .
bounds 12:24 .
Brendan 1:10, 2:7, 2:15 .
brief 9:12, 9:21 .
briefly 4:7, 6:14, 6:17, 7:5 .
bring 24:8, 24:17 .
brother 3:4 .
Bureau 2:11, 15:12, 23:24, 25:3,
    25:21 .
business 15:16 .
.
.

< C > .
calculated 11:24 .
calculating 17:1 .
calculations 4:16, 4:20, 5:22,
    6:3 .
call 2:4, 13:25 .
called 15:17 .
Calling 2:7 .
candid 14:23 .
candidly 16:22 .
care 11:10, 20:23, 24:9 .
career 17:14, 24:25 .
Case 2:4, 2:8, 3:22, 4:18, 4:21,
    6:3, 6:8, 8:13, 8:22, 11:11,
    17:2, 17:23, 18:16, 19:15,
    20:12, 21:20, 22:3, 23:8,
    23:11, 23:14, 24:3,
    24:21 .
cases 4:13, 24:3 .
Category 5:21 .
caused 16:18 .
Center 12:5 .
certify 26:16 .
chances 14:7 .
change 12:17, 12:18 .

changed 13:25 .
characteristics 17:9 .
charged 7:22, 16:3, 20:1 .
charges 7:24, 16:3, 20:1 .
Chesapeake 12:5 .
Child 17:23, 18:13, 20:13,
    20:23, 23:16 .
childhood 17:11, 24:22 .
children 6:25, 7:18, 18:3, 18:5,
    20:22 .
circumspect 10:13 .
circumstances 17:21, 22:5,
    22:8 .
citizen 10:18 .
clarify 15:1 .
clearly 24:22 .
client 3:13, 11:23, 20:4 .
close 14:6, 16:1 .
Code 17:5 .
collect 22:9 .
collection 18:2 .
comes 19:21 .
coming 14:6, 14:18 .
commence 3:25 .
commendations 3:4, 17:13 .
comments 16:24 .
Commission 25:21 .
commitment 25:19 .
communication 20:18 .
compliant 19:24 .
comply 17:7, 19:11 .
component 24:14 .
computer 1:42, 5:7, 20:25 .
computers 21:2, 21:4 .
concern 7:7, 7:11 .
concerning 16:10 .
concerns 7:12 .
concluded 26:13 .
conclusion 2:23, 8:11 .
conditions 20:4, 20:8, 20:12,
    21:19 .
conduct 5:2, 7:2, 7:24, 18:1,
    18:4, 18:15, 18:17, 21:1,
    24:11 .
Conference 16:8, 16:10 .
Congress 17:4 .
consequences 18:13 .
consider 17:3, 16:8, 18:11,
    18:18, 19:5, 25:15 .
considerations 25:6 .

**consistently** 12:19 .
**contact** 20:13, 20:16, 20:17, 20:19 .
**continue** 16:20 .
**continued** 7:7 .
**contract** 11:1 .
**contributed** 24:23 .
**contrite** 7:12 .
**control** 24:9, 24:18 .
**conviction** 25:9 .
**cooperating.** 16:11 .
**cooperative** 17:24 .
**correct** 22:19, 26:17 .
**corrections** 3:16, 3:20 .
**correctly** 11:24 .
**counsel** 17:3, 22:22, 24:5 .
**counseling** 24:9 .
**count** 26:5 .
**counts** 25:22 .
**couple** 4:11, 12:4 .
**course** 7:4, 19:1 .
**Courtroom** 1:23, 2:17 .
**cover** 13:21 .
**Criminal** 1:9, 2:8, 5:19, 5:20, 5:21, 14:9, 17:17 .
**CRR** 1:47, 26:16 .
**culpability** 18:20 .
**currently** 15:3 .
**custodian** 8:6 .
**cybersecurity** 8:25 .
.
.
**< D >.**
**daily** 20:20 .
**damaging** 18:4 .
**Dated** 26:21 .
**daughter** 3:4, 9:18, 11:6, 17:14, 17:15 .
**day** 12:25, 26:21 .
**days** 12:11, 25:17 .
**December** 14:8 .
**decided** 9:18 .
**decision** 24:20 .
**decrease** 5:12, 5:14 .
**deep** 16:17 .
**defect** 25:11 .
**DEFENDANT** 1:12, 1:32, 6:23, 7:1, 7:7, 7:20, 7:21, 7:25, 8:3, 8:22, 16:11, 16:16, 17:9, 18:23, 20:10, 22:21, 23:1,

26:12 .
**defendants** 18:19 .
**Defense** 10:10, 11:1 .
**department** 10:19, 11:21, 14:1 .
**depending** 22:8 .
**depictions** 5:3 .
**described** 17:18 .
**designated** 15:22, 23:23 .
**designation** 24:1, 25:18 .
**despite** 10:16 .
**detail** 8:24 .
**detailed** 23:2 .
**detained** 25:18 .
**Detention** 12:5 .
**determinative** 24:7 .
**determine** 4:17, 21:15 .
**determined** 19:20 .
**deterrence** 18:11, 18:12, 18:14 .
**devices** 7:10 .
**different** 8:6, 11:22, 12:22 .
**difficult** 10:15, 10:17, 12:10, 17:11, 22:3 .
**Digital** 22:17 .
**Direct** 20:13, 20:16, 20:17 .
**disability** 14:16 .
**disabled** 13:11 .
**discuss** 4:14 .
**discussed** 3:14 .
**dismissed** 25:22 .
**disparities** 18:19 .
**disparity** 18:22 .
**dispute** 3:25, 4:10 .
**distinguished** 17:13 .
**distribution** 7:22 .
**DISTRICT** 1:1, 1:2 .
**disturbing** 10:4, 18:2 .
**DIVISION** 1:3 .
**docketed** 8:14 .
**documents** 9:24 .
**doing** 14:11 .
**done** 7:9, 8:10, 8:11, 10:2, 12:20, 13:19 .
**doubt** 4:10, 7:11 .
**down** 12:8 .
**downwards** 22:7 .
**drinking** 11:8, 11:12 .
**Drive** 22:18 .
**during** 19:1, 20:19, 24:25 .

.
.
**< E >.**
**eager** 16:15 .
**earlier** 6:7, 8:16, 17:12, 17:22 .
**early** 10:18 .
**education** 8:23 .
**effects** 18:4 .
**either** 22:7, 23:3 .
**elaborate** 9:4 .
**emails** 13:9 .
**employed** 8:25, 9:1, 10:18, 10:21, 10:22, 11:3, 14:7, 14:8 .
**employment** 8:22, 14:11 .
**employments** 10:20 .
**end** 12:25, 14:3, 19:15, 19:25 .
**enhancement** 4:22, 5:1, 5:6, 5:9 .
**enlisted** 17:12 .
**ensure** 17:5 .
**entered** 25:16 .
**entirety** 23:20 .
**escape** 18:6 .
**Esquire** 1:28, 1:34 .
**establishes** 19:20 .
**events** 13:17 .
**eventually** 2:25, 17:12 .
**everyone** 2:19, 5:22 .
**everything** 16:19 .
**evidence** 18:3 .
**example** 14:15 .
**exhibits** 3:3 .
**exploitation** 5:3 .
**exploitive** 7:3 .
**express** 19:16 .
**extensive** 17:24 .
**External** 22:18 .
**extra** 25:6 .
**extremely** 7:1, 10:4, 12:14, 12:20, 18:9 .
**eye** 12:9 .
.
.
**< F >.**
**facilities** 15:18, 20:23 .
**fact** 12:18 .
**factor** 18:16 .

factors 17:4 .
facts 6:23, 7:20 .
fair 10:14 .
family 25:1 .
far 10:20 .
faulted 11:7 .
favor 15:19 .
FBI 1:39 .
fear 18:21 .
Federal 1:48, 2:10, 19:5 .
feel 8:2, 9:3 .
felt 9:23, 9:24 .
field 8:25 .
file 25:17 .
filed 25:17, 25:20 .
filing 8:9, 25:14 .
financial 8:16, 13:25, 14:13,
    21:6, 21:7, 22:5, 22:8, 22:10,
    23:19 .
find 24:23 .
finding 8:18, 23:9 .
fine 4:7, 13:23, 14:3, 14:22,
    14:23, 21:21, 21:22,
    21:23 .
first 4:15, 9:15, 14:2, 17:8 .
five 6:21 .
five-level 5:8 .
flexible 19:24 .
Floor 1:49 .
focus 6:17 .
follow 21:10, 21:13, 21:17 .
following 3:1, 6:22 .
foregoing 26:17 .
forensic 7:23 .
forever 7:18 .
forfeit 22:17, 22:20 .
forfeited 8:13 .
forfeiture 8:10, 22:12 .
forth 13:9 .
forthcoming 22:13 .
forward 11:13, 13:16 .
found 2:23 .
four-level 5:1 .
FRANCIS 1:10 .
frankly 12:23 .
friend 9:17 .
front 19:15, 19:25 .
fulfill 23:20 .
fundamental 25:11 .
fundamentally 17:19 .

future 14:15 .

.

.

< G > .
G. 1:47, 26:16, 26:28 .
GALLAGHER 1:22 .
gave 9:25, 10:19, 15:17 .
general 18:12 .
gentleman 15:15 .
gets 11:25, 12:1, 14:17 .
getting 19:3 .
given 18:16, 19:25 .
gives 7:10, 15:16 .
gotten 11:9 .
Government 2:9, 3:6, 3:10,
    4:19, 5:13, 6:7, 6:13, 6:17,
    8:7, 8:16, 8:19, 9:7, 9:22,
    10:10, 11:11, 12:21, 13:2,
    13:7, 13:15, 17:22, 24:5 .
granted 5:17 .
great 24:24, 24:25 .
greater 17:6, 19:10 .
guideline 4:17, 4:21, 4:24, 5:4,
    5:8, 5:10, 6:2, 6:5,
    18:21 .
Guidelines 4:17, 6:17, 7:14,
    15:24, 17:2, 19:6 .
guilty 2:23, 16:9, 25:9,
    25:12 .

.

.

< H > .
half 11:23 .
happens 14:2, 16:21 .
Hard 10:15, 12:16, 16:18, 16:20,
    22:18 .
He'll 14:8, 14:9, 14:16 .
health 19:4, 21:12 .
hear 16:15 .
heard 17:9 .
HEARING 1:21, 3:25, 8:4, 8:12,
    13:15, 13:16, 17:2 .
heart 16:17 .
help 15:17, 24:20, 25:3 .
helped 11:16 .
helping 24:10 .
hereby 26:16 .
high-school 10:21 .
History 5:19, 5:20, 5:21, 11:9,
    17:8, 17:17 .

HONORABLE 1:22 .
hope 25:1 .
Hopefully 8:11, 19:1 .
Hopkins 11:15 .
hospital 11:15 .
hours 20:17 .
house 13:6 .
hundreds 18:4 .

.

< I > .
idea 10:1 .
identified 6:25 .
images 5:9, 7:3, 7:19, 7:22,
    17:23, 18:2, 18:6 .
impact 3:7, 6:8, 6:24, 7:17 .
implied 7:20 .
important 11:12, 18:11, 18:16,
    23:12, 24:14, 24:17 .
impose 14:22, 19:9, 19:15, 20:1,
    21:22, 21:25, 23:10,
    23:15 .
imposed 6:21, 16:13, 21:11,
    21:20 .
imposing 17:6, 20:7, 24:4,
    24:13 .
imprisonment 3:24, 24:13 .
improving 18:24 .
impulses 24:8, 24:17 .
in-person 20:18 .
inappropriate 17:20 .
incarceration 6:4, 6:16,
    7:13 .
incidental 20:19 .
incidentally 23:1 .
include 16:10, 20:18, 20:19 .
includes 14:14 .
including 3:3, 10:3, 19:3,
    20:22 .
income 14:18 .
indicated 6:15 .
indication 7:19 .
indictment 2:24, 25:24 .
indigency 8:18 .
indigent 14:22, 14:23,
    23:10 .
infant 5:4 .
Information 9:4, 11:2, 17:25,
    21:6, 21:7 .
initial 12:12, 21:1 .

install 20:24 .
installments 15:5, 15:8 .
insurance 25:7 .
interaction 18:3 .
interactive 5:7 .
Investigation 2:11 .
investigators 17:25 .
involuntary 25:10 .
involved 4:23, 5:7, 5:9, 7:2 .
iphone 13:8, 13:10 .
isolation 12:13 .
issue 16:3, 22:12, 23:3 .
issues 3:25, 8:16, 14:10, 15:11,
    19:4, 24:22 .
item 8:13, 22:20 .
items 3:1, 22:25 .
.
.
< J > .
job 10:2, 25:5 .
jobs 10:21 .
joined 2:10, 10:25 .
jointly 6:5 .
Judge 12:4, 12:14, 13:4 .
judgment 25:19 .
jurisdiction 15:25 .
JVTA 23:8 .
.
.
< K > .
Kavanaugh 1:10, 2:8, 2:15,
    2:21, 3:2, 4:15, 5:19, 9:16,
    10:13, 13:9, 15:21, 16:12,
    16:24, 17:3, 17:10, 17:24,
    18:14, 19:1, 19:17, 20:9,
    21:23, 22:19, 23:10, 23:13,
    23:23, 24:2, 25:18,
    26:11 .
keep 14:10, 22:11 .
keeping 19:19 .
kid 10:20 .
kind 14:11, 16:2 .
knows 6:20, 6:23, 7:17, 10:5,
    10:23, 15:18 .
.
.
< L > .
large 7:1 .
Larry 1:34, 2:15 .
last 12:4 .

lawyer 25:14 .
lawyers 11:14, 24:21 .
leaps 12:24 .
learned 11:17, 24:16 .
least 9:25, 14:16 .
led 13:2 .
left 2:15 .
length 13:14 .
lengthy 25:6 .
lessons 24:17 .
letter 10:8, 17:18 .
letters 3:4, 3:7 .
letting 13:10 .
level 4:21, 5:11, 5:18, 8:23 .
life 10:15, 10:17, 11:9, 19:15,
    19:19, 20:1 .
lifetime 6:19, 6:22, 7:15,
    8:2 .
likely 20:22 .
links 7:21, 7:25 .
little 14:4, 16:2 .
LLP 1:35 .
locked 12:8 .
Lombard 1:49 .
long 11:5, 12:22, 24:12 .
long-standing 14:10 .
longer 11:23 .
look 17:8 .
lot 10:17, 10:23, 11:17, 12:15,
    12:23, 13:3 .
lots 11:16 .
Low 15:22, 15:25, 23:24 .
luck 26:10 .
.
.
< M > .
maintaining 24:9 .
manager 11:1 .
mandatory 20:3, 20:8 .
manner 17:20 .
Marla 9:17 .
married 11:5, 17:14 .
marshaled 23:12, 23:21 .
marshals 12:8 .
Mary 1:28, 2:8 .
Maryland 1:2, 1:16, 1:50 .
mask 2:19 .
masked 2:20 .
masking 2:17 .
masochistic 5:2, 7:3 .

material 4:23, 5:2 .
math 11:21 .
mathematical 4:16 .
matter 26:7, 26:19 .
matters 14:25 .
meaningful 18:13 .
means 24:14 .
mechanical 1:41 .
meets 15:24 .
memorandum 3:2, 3:6 .
mental 19:4, 21:12 .
mention 7:5, 7:10, 12:12 .
mentioned 3:9, 6:7, 8:16, 12:21,
    17:11, 17:15, 17:22,
    19:6 .
merely 7:10 .
military 3:3, 9:25, 10:6, 10:24,
    10:25, 17:12, 24:25 .
mind 22:11 .
minimal 14:7 .
minimum 6:20 .
minor 4:23, 14:11 .
mistake 13:11 .
Mitchell 1:47, 26:16, 26:28 .
mixup 13:5 .
modification 22:7 .
momentarily 8:9 .
money 15:3, 15:6 .
monies 23:12 .
monitoring 20:25, 21:3,
    24:15 .
month 22:2 .
months 6:4, 6:16, 10:9, 12:4,
    19:7 .
morning 2:3, 2:5, 2:7, 2:12,
    2:14, 2:16 .
motion 5:13, 5:16, 8:9,
    8:14 .
motivated 12:17, 12:18 .
move 8:5, 12:9 .
MS. 2:4, 2:6, 3:9, 3:10, 3:18,
    3:19, 3:21, 4:1, 5:15, 5:23,
    5:24, 6:11, 6:12, 6:14, 8:21,
    9:8, 22:15, 22:23, 23:4,
    25:22, 25:23, 26:4, 26:8 .
.
.
< N > .
NASA 11:2 .
nature 17:21, 18:16, 19:25,

20:16 .
necessarily 12:25, 19:18 .
necessary 17:6, 19:10 .
need 4:14, 4:15, 9:23, 13:15,
    18:8, 18:12, 18:15, 18:18,
    18:23, 19:5, 22:11, 26:7 .
negotiated 10:10 .
network 7:21 .
new 13:2 .
Nice 2:14 .
No. 1:9, 3:21, 26:8 .
NORTHERN 1:3 .
note 8:8 .
noted 10:16 .
nothing 9:9, 13:1, 16:20 .
notice 25:17 .
Number 2:8, 6:8, 6:24, 6:25, 7:2,
    10:5, 10:19, 17:13, 22:4,
    22:18, 22:25 .
numbers 10:3 .

.
.
< O > .
objections 3:16 .
Obviously 9:1, 11:7, 14:8, 15:2,
    16:3, 22:9 .
occurred 8:23, 13:18 .
offense 3:7, 4:21, 5:7, 5:9, 5:11,
    5:18, 14:9, 17:22, 18:8, 18:9,
    21:8, 21:9 .
Office 1:29 .
officer 20:15, 20:17, 20:24, 21:1,
    21:5, 21:16 .
Official 1:48, 26:29 .
Okay 3:22, 4:4, 4:9, 8:15, 9:5,
    9:12, 20:7, 20:11, 23:6,
    26:1 .
old 11:23, 13:22, 17:10 .
Omicron 12:7 .
once 22:2 .
one 8:13, 10:16, 12:14, 15:1,
    17:24, 24:4, 26:5 .
one-count 2:23, 25:24 .
ones 15:19 .
online 18:4 .
opener 12:9 .
openly 16:22 .
oral 8:12 .
order 8:10, 22:13, 25:19 .
ordered 2:24 .

ordinary 20:20 .
others 19:22 .
Otherwise 2:19, 14:11 .
outside 9:13 .
outstanding 4:3 .
overload 9:24 .
owes 23:13 .
own 11:13, 11:14, 12:19, 17:19,
    24:8, 24:20 .

.
.
< P > .
page 22:15 .
paid 14:2, 14:3, 14:24, 15:4,
    15:7 .
pain 16:18 .
pandemic 18:25 .
paragraph 23:2 .
parks 20:23 .
Part 12:12, 13:4, 14:13,
    14:18 .
participate 21:8, 21:12,
    21:16 .
particular 3:24, 18:21,
    20:1 .
parties 6:5, 6:15, 18:20,
    19:9 .
Passport 22:17 .
path 25:4 .
patience 16:22 .
Patricia 1:47, 26:16, 26:28 .
pay 15:4, 21:11, 21:23 .
payable 22:1 .
payments 22:11 .
penalty 23:19 .
people 2:18, 12:15, 15:17, 16:2,
    18:5, 18:12, 19:22, 21:3 .
per 22:2 .
percent 14:16 .
performing 19:17 .
period 4:2, 6:18, 6:20, 6:21,
    6:22, 7:15, 10:1, 11:20,
    25:6 .
periodic 21:2 .
permission 20:15 .
permitted 2:18 .
person 16:19, 17:19, 24:24 .
perspective 3:10 .
photos 10:3 .
physical 18:3, 20:19 .

place 16:2, 20:21, 24:1 .
placed 16:5 .
placement 4:8, 15:12 .
places 6:4 .
Plaintiff 1:7, 1:26 .
playgrounds 20:23 .
plea 9:23, 16:9, 19:9, 25:9,
    25:12, 25:16 .
Please 2:3 .
pod 12:11 .
point 4:14, 5:13, 12:2, 15:12,
    20:2 .
policy 16:9 .
Pornography 17:23, 18:14,
    23:16 .
portrays 5:2 .
position 8:17, 8:19, 9:7 .
possessed 4:23 .
possesses 7:19 .
possession 18:13 .
possible 16:1, 22:10, 25:5 .
posted 7:25 .
posting 7:21 .
pot 15:3, 15:6 .
potential 7:12, 12:6, 23:7,
    24:24 .
preliminarily 22:1 .
preliminary 8:10 .
preparation 2:24 .
prepared 13:14, 25:19 .
prepubescent 4:23 .
Present 1:39, 6:9, 9:10 .
presentence 2:24, 3:2, 3:14,
    14:13, 23:2 .
presently 2:18 .
Pretrial 4:20, 7:8, 8:3, 13:8,
    13:10 .
pretty 10:1, 12:2, 12:8 .
prior 17:17 .
priority 9:1 .
prison 22:2 .
Prisons 15:12, 23:25, 25:3,
    25:21 .
probably 11:9, 14:10,
    15:23 .
probation 10:19, 11:20, 12:3,
    20:15, 20:17, 20:24, 21:1,
    21:5, 21:16 .
problem 11:8, 12:6, 26:6 .
problems 11:9 .

proceeding 2:20, 2:23, 16:10, 25:11 .
Proceedings 1:20, 1:41, 26:13, 26:18 .
process 17:19 .
produced 1:42 .
productive 10:18 .
program 21:9, 21:10, 21:13, 21:17, 21:18 .
programming 19:3 .
prohibited 21:15 .
pronouncement 8:13 .
protect 18:15 .
provide 18:23, 21:5 .
provided 17:25 .
provides 23:17 .
psychologist 3:5 .
public 18:15 .
purpose 7:5 .
purposes 17:7, 19:11 .
pursuant 4:21, 23:8 .
put 9:25, 12:12, 13:12, 16:1 .
puts 5:21 .
putting 22:14 .
.

.
< Q >.
qualify 9:3 .
quantity 17:22 .
question 13:8, 15:11, 21:21 .
quite 10:6, 12:23, 13:21, 14:23 .
.

.
< R >.
raised 11:6 .
ramifications 24:11 .
range 4:17, 6:3, 6:6 .
rather 23:21 .
reached 4:19, 4:20, 24:5 .
read 3:14, 9:22 .
readily 17:25 .
really 4:2, 14:18, 22:5, 24:16 .
reapply 14:17 .
rearraignment 2:22 .
reason 16:4, 23:15 .
reasonable 22:4, 24:6 .
reasonably 20:14 .

reasons 6:22, 7:16, 25:20 .
recall 26:4 .
received 3:1, 3:5, 3:8, 11:13, 17:13 .
recently 13:24 .
recommend 6:15 .
recommendation 4:1, 4:8, 6:18, 7:6, 15:13, 16:4, 16:5, 23:22, 24:1 .
recommended 15:21, 20:12, 21:16 .
reconsider 19:17 .
record 10:14, 14:9, 19:16, 19:20, 20:5, 22:14, 23:9, 26:18 .
recorded 1:41 .
records 3:4, 9:25, 18:19 .
referred 11:15 .
regarding 14:25 .
regular 19:3 .
regulations 21:10, 21:13, 21:18 .
release 4:2, 6:18, 7:6, 7:8, 7:15, 8:2, 8:4, 11:18, 11:20, 12:1, 12:20, 13:19, 13:20, 19:13, 19:16, 19:18, 19:19, 19:21, 20:2, 20:4, 21:7 .
released 19:17, 22:2, 22:6, 22:8 .
relevant 17:4 .
relocated 8:3 .
remain 2:20, 17:15, 20:21 .
remorseful 12:14 .
remove 2:19 .
reoffend 7:12, 24:7, 24:16 .
report 2:25, 3:2, 3:14, 3:18, 14:13, 20:16, 23:2 .
Reporter 1:48, 26:29 .
request 8:12, 8:18 .
requested 12:5, 21:6 .
requesting 6:5 .
required 4:16, 16:14 .
residence 7:9, 8:5 .
resources 23:21, 25:2 .
respect 5:19, 8:17, 21:21 .
responsibility 5:12, 18:1, 24:19 .
restitution 3:24, 9:2, 10:12, 14:3, 14:24, 15:3, 15:4, 21:24, 21:25, 22:9, 23:13, 23:18 .

resulting 24:22 .
revictimized 7:1, 7:18, 18:6 .
review 20:5 .
reviewed 3:1, 3:18, 6:9, 20:3, 20:6, 20:9 .
revision 22:7 .
rights 25:8, 25:15 .
RMR 1:47, 26:16 .
rule 2:17 .
rules 21:10, 21:13, 21:17 .
run 16:2 .
.

.
< S >.
sad 24:3 .
sadistic 5:2, 7:3 .
safer 15:19, 16:2 .
SAG-20-429 2:8 .
Salomon 1:39, 2:10 .
Sarah 9:16 .
scheduled 2:25 .
Schiller 1:39, 2:10 .
school 9:19 .
schools 20:23 .
score 5:20 .
search 7:8, 12:21, 12:24, 13:13, 21:4 .
searched 13:1 .
searches 21:2 .
seated 2:3 .
second 7:8, 11:4, 12:21 .
Security 15:22, 23:24 .
seek 24:20 .
seems 4:19 .
seen 6:24 .
sense 10:22, 15:18 .
sent 10:8 .
sentence 6:4, 6:16, 7:13, 10:11, 11:19, 11:25, 16:13, 17:6, 18:10, 18:20, 19:2, 19:9, 19:12, 19:15, 24:3, 24:6, 24:13, 24:14, 25:5, 25:12 .
Sentencing 1:21, 2:9, 2:25, 3:2, 3:6, 4:17, 16:10, 17:4, 18:19, 18:21, 19:6, 19:11, 25:20 .
serial 22:18 .
series 3:3 .

**serious** 14:9, 18:9 .
**seriousness** 18:8 .
**serves** 11:24 .
**service** 5:8, 19:2 .
**Services** 13:8 .
**set** 3:6, 17:4 .
**SETZER** 1:28, 2:4, 2:6, 2:8, 3:9,
    3:10, 3:18, 3:19, 3:21, 4:1,
    5:15, 5:23, 5:24, 6:11, 6:12,
    6:14, 8:21, 9:8, 22:15, 22:23,
    23:4, 25:22, 25:23, 26:4,
    26:8 .
**several** 7:2 .
**sex** 21:8, 21:9 .
**sexual** 5:3 .
**shared** 13:7, 18:6 .
**short** 11:2 .
**shy** 11:25, 12:1 .
**significant** 6:8, 8:24, 12:3,
    13:21, 15:2, 18:4, 18:10,
    21:24, 23:19, 24:4 .
**similar** 18:19, 23:15 .
**sitting** 15:3 .
**situation** 14:4, 24:23 .
**six** 11:24, 14:19 .
**sizable** 18:2 .
**software** 20:25 .
**somebody** 12:3 .
**somehow** 25:10 .
**someone** 7:18, 24:15 .
**Sorry** 16:17, 26:4 .
**sort** 7:19, 10:20, 15:4 .
**sorts** 4:13 .
**sought** 11:14, 12:18, 24:10 .
**speaking** 2:18 .
**Special** 2:10, 4:12, 8:19, 14:2,
    21:19, 23:6, 23:7, 23:11 .
**specific** 8:8, 9:4, 9:13, 18:14,
    21:8, 21:9 .
**spent** 10:23, 12:4, 12:19 .
**stand** 7:11 .
**standard** 20:3, 20:8 .
**start** 10:15, 17:11 .
**started** 16:19 .
**starting** 12:7 .
**state** 8:6 .
**statement** 6:13, 6:23, 7:20,
    25:20 .
**statements** 6:8, 6:25, 7:17 .
**States** 1:1, 1:5, 2:7, 17:5 .

**statute** 17:5, 17:7, 19:11 .
**stay** 25:4 .
**stenographic** 26:18 .
**stenography** 1:41 .
**STEPHANIE** 1:22 .
**stopped** 11:11 .
**Street** 1:49 .
**strengths** 25:2 .
**stretch** 15:23 .
**subject** 21:2, 21:4, 22:6 .
**submit** 21:14 .
**submitted** 6:7, 9:22, 9:23 .
**subsequently** 11:3 .
**substance** 21:14, 21:17 .
**substances** 21:15 .
**subtotal** 5:11 .
**success** 10:7 .
**successful** 10:2, 11:6 .
**sufficient** 17:6, 19:10 .
**supervised** 4:2, 6:18, 7:6, 7:15,
    8:2, 11:18, 11:20, 12:1,
    12:20, 13:18, 13:20, 19:13,
    19:16, 19:18, 19:19, 19:21,
    20:2, 20:4 .
**supervision** 20:12, 24:12, 25:3,
    25:6 .
**support** 7:23, 9:18, 25:1 .
**supporting** 7:6 .
**supportive** 17:15 .
**suspended** 19:1 .
**Systems** 11:2 .
 .
 .
**< T >** .
**talked** 13:7, 18:9 .
**term** 3:23, 8:2, 12:1, 13:20,
    24:12 .
**terms** 2:17, 19:13 .
**testing** 21:14 .
**thankfully** 18:24 .
**therapy** 12:18, 12:19 .
**they've** 16:18 .
**third-level** 5:14 .
**third-party** 8:6 .
**thousand** 7:2 .
**throughout** 2:20 .
**today** 2:25, 6:9, 8:11, 9:16, 9:19,
    10:9, 12:11, 17:16, 26:7 .
**toddler** 5:4 .
**toddlers** 7:4 .

**took** 13:1, 18:1 .
**topics** 9:13 .
**Tor** 7:20 .
**total** 5:17 .
**toward** 23:12 .
**towards** 23:21 .
**track** 19:20 .
**training** 18:23, 18:25 .
**TRANSCRIPT** 1:20, 1:41,
    26:17 .
**trauma** 17:19, 24:8 .
**traumatic** 17:10, 24:22 .
**treating** 3:5 .
**treatment** 11:14, 11:16, 18:24,
    18:25, 19:4, 21:9, 21:12,
    21:17 .
**tried** 17:19 .
**truly** 12:17, 16:17 .
**try** 15:25, 22:9 .
**trying** 26:4 .
**turned** 10:17 .
**Turning** 17:21 .
**two** 8:15, 14:25, 15:11 .
**two-level** 4:22, 5:6, 5:12 .
**type** 18:15 .
 .
 .
**< U >** .
**U.S.** 1:29 .
**Ultra** 22:17 .
**unable** 7:9 .
**unannounced** 21:2 .
**unaware** 15:6 .
**understand** 3:22, 5:13, 18:12,
    19:13, 20:8, 22:12, 22:19,
    24:11 .
**understanding** 13:2 .
**United** 1:1, 1:5, 2:7, 17:5 .
**unlawful** 25:10, 25:13 .
**until** 13:22, 13:24, 25:18 .
**unwarranted** 18:18 .
**upwards** 22:7 .
 .
 .
**< V >** .
**vein** 24:12 .
**versus** 2:7 .
**Vicky** 9:6, 23:16 .
**Victim** 3:6, 6:8, 6:24, 7:17,
    23:17 .

**victimized** 18:5 .
**victims** 3:7, 6:9, 6:25, 9:2,
    23:13 .
**videos** 17:23 .
**viewed** 18:7 .
**violence** 5:3 .
**volunteered** 10:6 .
**vs** 1:8 .
  .
  .
**< W >** .
**W.** 1:49 .
**waiting** 15:4 .
**waived** 25:11, 25:15 .
**wanted** 4:7, 9:15 .
**war** 10:3 .
**warn** 21:3 .
**warrant** 7:8, 12:21, 12:24,
    13:13 .
**warrants** 18:10 .
**ways** 11:7, 24:13 .
**wed** 19:18 .
**Western** 22:17 .
**whatever** 13:17 .
**wherewithal** 22:10 .
**Whether** 7:7, 13:25, 14:17,
    15:10, 16:11, 22:3, 24:7,
    25:15 .
**whole** 12:8 .
**wife** 3:5, 8:5, 8:23, 9:1, 9:16,
    14:19, 17:14, 17:16,
    17:18 .
**will** 6:17, 8:11, 11:25, 12:2,
    14:14, 14:15, 14:19, 14:22,
    15:4, 16:19, 19:2, 19:20,
    20:7, 22:5, 22:6, 22:13,
    23:10, 23:25, 24:15, 25:18,
    25:19, 25:20 .
**willingness** 19:16 .
**wish** 2:19, 6:9, 9:10, 16:15,
    25:16 .
**within** 6:5, 6:16, 7:14, 15:25,
    18:20, 20:17, 25:17 .
**without** 20:15 .
**won** 10:5 .
**wonderful** 25:1 .
**work** 16:20 .
**worked** 11:1 .
**working** 16:18 .
**works** 14:1 .

**written** 20:18 .
**WXF1A66DUYEE** 22:18 .
  .
  .
**< X >** .
**XXXXXX** 9:18 .
  .
  .
**< Y >** .
**year** 12:19, 13:16, 13:18,
    13:19 .
**years** 4:24, 6:21, 10:1, 10:23,
    10:25, 11:21, 11:23, 11:25,
    12:1, 13:21, 13:22, 14:19,
    17:10, 18:5 .
**young** 10:21 .
**yourself** 24:10, 24:23, 25:2 .
  .
  .
**< Z >** .
**zero** 5:20 .